Jonathan Welden *et al.*, Appellants *v.* Thompson W. Francis, Appellee.

### APPEAL FROM WINNEBAGO.

This Court will not set aside a verdict of a jury, unless it is against the weight of evidence.

This was an action on promises, tried before Hon. Hugh Henderson and a jury, at the December special term, 1850, between the appellee plaintiff, and the appellants defendants, which resulted in a verdict and judgment for the appellee.

The declaration was upon two promissory notes made by the defendants.

First plea. General issue.

Second plea. Plaintiff ought not to maintain his action for the whole amount of the notes, because the consideration for them was a he-ass and she-ass sold and delivered by the plaintiff to Welden at Michigan City, Indiana, 18th December, 1846, for the sums of money expressed in the notes, and a warranty. In consideration of the sale and notes, the plaintiff warranted the he-ass and she-ass to be sound in every way; but he was unsound, whereby he was of no use or value to Welden, and to wit, 12th December, 1848, died of the unsoundness. Whereby Welden, by the loss of the animal, and of the value he would have been of if sound, and of the services he ought to have received from him until the time he died, sustained damages, to

wit, to $200. Prayer, if the plaintiff ought to maintain his action for any part of the moneys due, according to the notes, except that part over and above those damages.

The defendants to prove their part of the issues, read the warranty following:

I, this day, sell to Jonathan Welden, my large jinney and a small jack. I warrant them to be both sound in every way, But do not warrant the jack to be a foal getter, as I have not owned him but a short time.

Michigan City, Dec. 18, 1846.  T. W. FRANCIS.

The depositions of James Hopkins and Fisher Ames were read on the trial.

They say the plaintiff sold Jonathan Welden, in the fall of 1846, or January or February, 1847, or thereabouts, a jack-ass. The terms of sale were promissory notes of Jonathan Welden and Betsy Welden, for $75. Had known him some five months, and was sound when sold to said Jonathan Welden. At the same time, plaintiff sold Jonathan Welden a she-ass, which they knew while suckling, was sound when sold to Welden.

Godfrey Carnes, whose deposition was taken, says: I saw a jack-ass, which I understood to be J. Welden's. Thinks it was some time in December, 1846. He was a grey dun or mouse color. Supposes he was about the common size. He appeared to be lame in his feet and legs. To me he would have been of no value whatever.

The deposition of Joseph Goodrich was taken; says defendant Welden left a jack-ass in my possession. at my residence, in the fore part of January, 1848. His feet were rather out of shape. He was left with me for about eleven months. I think his feet were never sound while in my possession. He died early in December, 1848, thinks with disease. I think the disease in his limbs and feet was of a permanent nature.

The defendants called William A. Miller, who testified that he resides in the county of De Kalb; that Welden came to his house from the east, in the latter part of December, 1846, with a wagon and one horse in it, and a she-ass. He had also a jack-ass which gave out at a river about three quarters of a mile from the house of the witness, and could not go any further. The horse and other ass were in good condition, and not jaded. The he-ass was got to the witness' house, and was there taken care of by

him, and remained there three or four weeks, sick; at the end of which time he was so far recovered and recruited, that Welden came and took him away home, as he supposed. He further testified, that he was acquainted with the diseases of such animals, and that the disease could not, in his opinion, be a fresh founder; that the animal was thin in flesh. He appeared to be tired out; his feet and legs were sore, and he could not get up, and did not get up for several days without lifting, and when up, had difficulty in voiding water. His hoofs were grown out and contracted. He considered him of no value whatever.

FRANCIS BURNAP, for Appellant.

MILLER and MILLER, for Appellee.

TREAT, C. J.   The testimony in this case has been carefully considered, and we are not prepared to say that the verdict was against the weight of evidence.   Two witnesses, who knew the animal in question at the time of the sale, and for several months previously, stated that he was sound when sold; while the two other witnesses testified, that he was subsequently unsound and valueless, from a disease that, in their opinion, had its origin anterior to the sale.   This is stating the case as favorably for the appellant, as the bill of exceptions will authorize.   The Court would not be justified in holding that the jury erred in the conclusion that there was no breach of the warranty.

The judgment is affirmed.

*Judgment affirmed.*